UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **NICHOLE DORSEY** | **CASE NO. 6:25-CV-00952** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **IBERIA COMPREHENSIVE COMMUNITY HEALTH CENTER INC ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is the Motion to Dismiss pursuant to F.R.C.P. Rule 12(b)(6) filed by Defendants, Iberia Comprehensive Community Health Center, Inc. ("ICCHC"), ICCHC Board ("the Board"), and De'Marquis Hamilton, CEO. (Rec. Doc. 10). Plaintiff, Nichole Dorsey, opposed the Motion (Rec. Doc. 12), and Defendants replied (Rec. Doc. 17). The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the parties' arguments, and for the following reasons, the Court recommends that Defendants' Motion to Dismiss be granted in part and dismissed in part.

**Facts and Procedural History**

Plaintiff filed this suit in July 2025 against her former employer, ICCHC, its board, and its current CEO, Hamilton, alleging employment discrimination based on her gender, retaliation, and defamation. (Rec. Doc. 1).

Ordinarily, in ruling on a Rule 12(b)(6) motion, the Court is limited to the allegations of the complaint and any exhibits attached thereto; however, the court may also consider documents attached to the defendant's motion if they are referenced in the complaint and central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007). The court is also permitted to take judicial notice of public records as well as facts which are not subject to reasonable dispute in that they are either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011). The Fifth Circuit has also sanctioned consideration of certain documents which were attached to the plaintiff's opposition, where no party questioned the authenticity of the documents and the documents are sufficiently referenced in the complaint. *Walch v. Adjutant Gen.'s Dep't of Texas*, 533 F.3d 289, 294 (5th Cir. 2008). Accordingly, the Court shall consider Plaintiff's allegations (Rec. Doc. 1), Plaintiff's July 16, 2024 termination letter (Rec. Doc. 10-5, attached to Defendants' Motion and referenced in the complaint), and Plaintiff's

2

EEOC right to sue letter (Rec. Doc. 12-1, attached to the Complaint and to Plaintiff's opposition) in order to determine whether Plaintiff has stated a claim. The foregoing documents present the following facts.[1]

Although the factual allegations are poorly drafted, Plaintiff alleges she was hired in December 2009 as a staff accountant and later promoted to Chief Financial Officer. (Rec. Doc. 1, ¶7). In 2024, Hamilton was hired as the new CEO, and Plaintiff was warned not to communicate with the former CEO, Mr. Campbell. (Id.) She alleges that following an organizational restructuring, the executive team was admonished to have no contact with former CEO Campbell and that the Board began to interfere with her job as CFO. The Board allegedly changed a nominal fee despite Plaintiff's advice otherwise. (¶8). Plaintiff alleges that CEO Hamilton undermined her authority, ignored her requests that he reimburse money owed to the company for an unattended work trip, and later returned the funds to a staff accountant rather than to her. (¶9). She alleges that CEO Hamilton "had trouble respecting women," did not consult with her, bypassing the chain of command, ignored her, and at times failed to speak to her when passing, because she is a female. (¶10).

---

[1] The Court did not consider documents at Rec. Doc. 10-4 or 10-6 as unauthenticated documents which are not sufficiently referenced in the complaint. Neither did the Court consider documents at Rec. Doc. 10-3 or 10-7, which, though public records, are irrelevant and not sufficiently referenced in the complaint.

3

Plaintiff alleges that CEO Hamilton denied her request to use a company vehicle to visit satellite sites, though she had previously been allowed to use the vehicle and though CEO Hamilton received a monthly auto allowance and was allowed to use the company vehicle. (¶12). CEO Hamilton allegedly applied for a company credit card, with Board approval, and did not provide credit card statements to Plaintiff to include in her report. (¶13).

Plaintiff alleges that she participated in and investigated an internal EEOC claim involving CEO Hamilton before his appointment and that CEO Hamilton thereafter retaliated against her and created a hostile work environment because of this. (¶11). She alleges that on July 16, 2024, CEO Hamilton terminated her, without rehire eligibility or severance pay, without an exit interview, and despite her having been previously told she would not be fired. She had no prior bad evaluation, warning or write-ups. (¶14). She alleges that, since her termination, CEO Hamilton has said that she was fired for stealing money from ICCHC, which has damaged her reputation. (¶15). Defendants contend that Plaintiff was an at-will employment who was terminated as part of organizational restructuring which occurred with a new CEO. (Rec. Doc. 10-5).

Plaintiff asserts gender discrimination, retaliation, and hostile work environment claims and a state law defamation claim. Defendants move to dismiss all of Plaintiff's claims for failure to state claims upon which relief can be granted.

## Law and Analysis

### I.    Rule 12(b)(6) Standard

The defendant may challenge the complaint for failing to state a claim by filing a motion to dismiss under F.R.C.P. Rule 12(b)(6). When considering a motion to dismiss for failure to state a claim, the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir.2004). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007). Conclusory allegations and unwarranted deductions of fact are not accepted as true. *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982); *Collins v. Morgan Stanley*, 224 F.3d at 498. The law does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more …than…a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

## II. <u>Title VII Gender Discrimination</u>

In employment discrimination cases, under the *McDonnel Douglas* framework, if the plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the employer to provide a legitimate, non-discriminatory reason for the action. *Haire v. Bd. of Sup'rs of Louisiana State Univ. Agric. & Mech. Coll.,* 719 F.3d 356, 362–63 (5th Cir. 2013). In order to clear the initial hurdle, the plaintiff must show (1) that she is a member of a protected class; (2) that she was qualified for the position sought; (3) she was subject to an adverse employment action; and (4) she was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside her class. *Id.* at 363.

The parties do not dispute that Plaintiff, as a female, is a member of a protected class (see *id*) or that her termination constituted an adverse employment action. Plaintiff did not specifically plead allegations regarding her qualifications, but the Court must consider the allegations in Plaintiff's favor and thus interprets the allegations to show that she was qualified. She had served in an accounting department capacity since 2009 and was the CFO at the time of her termination. (Rec. Doc. 1, ¶7).

Otherwise, Plaintiff's allegations fail to show that she was replaced by a man or treated less favorably than similarly situated men. In fact, the complaint does not

6

allege any facts regarding any replacement for her position. She alleges that CEO Hamilton did not consult with her before transitioning to his new role because she is female, that he provided more respect to the men, and that he avoided and ignored her and failed to speak to her when passing, insinuating that he did not treat men as such. These alleged acts do not constitute actionable adverse employment actions. "To adequately plead an adverse employment action, plaintiffs need not allege discrimination with respect to an 'ultimate employment decision.' Instead, a plaintiff need only show that she was discriminated against, because of a protected characteristic, with respect to hiring, firing, compensation, or the 'terms, conditions, or privileges of employment.'" *Hamilton v. Dallas Cnty.,* 79 F.4th 494, 506 (5th Cir. 2023). The allegations do not show that CEO Hamilton's alleged conduct (other than termination) affected a term, condition, or privilege of Plaintiff's employment.

Plaintiff's allegations also fail to show that similarly situated men in nearly identical circumstances were treated more favorably:

> Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated. …The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment

7

decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions.

*Lee v. Kansas City S. Ry. Co.,* 574 F.3d 253, 259–60 (5th Cir. 2009) (citations omitted).

The complaint lacks sufficient allegations to show that similarly situated men were treated more favorably. Ultimately, the conduct which Plaintiff alleges and the broad, conclusory statement that CEO Hamilton respected men more than women is the sort of "petty slight, minor annoyance, and simple lack of good manners" which are insufficient to show discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006). Plaintiff failed to state a claim for gender discrimination.

### III. Hostile Work Environment

In order to establish a hostile working environment claim, [the plaintiff] must prove: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race [or gender]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. For harassment on the basis of race to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance;

and whether it unreasonably interferes with an employee's work performance.

*Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (cleaned up; citations omitted). See also *Long v. Eastfield Coll.,* 88 F.3d 300, 309 (5th Cir. 1996), citing same elements regarding gender-based claims.

The "mere utterance of an epithet which engenders offensive feelings in an employee" and "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" are insufficient to constitute harassment. *Shepherd v. Comptroller of Pub. Accts. of State of Texas*, 168 F.3d 871, 874 (5th Cir. 1999) (cleaned up), quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370 (1993) and *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2283 (1998).

In support of her hostile work environment claim, Plaintiff alleges that the Board interfered with her daily operations as CFO and changed a nominal fee from $25 to $15 despite her advice. She alleges, "it was a lot of disrespect towards me from the Board." She further alleges that CEO Hamilton undermined her authority and bypassed the chain of command to return certain funds, that he "had trouble respecting wom[e]n," provided more respect to men, avoided and ignored Plaintiff and failed to speak to her when passing. (Rec. Doc. 1, ¶8-9). Such allegations do not rise to the level of harassment contemplated by Title VII. Indeed, hostile work environment claims typically entail aggressive behavior, such as statements and

9

conduct. Compare e.g. *Shepard, supra* (no hostile work environment where co-worker made inappropriate statements and occasional unwanted touching). Here, CEO Hamilton's alleged behavior in ignoring Plaintiff was merely passive, with no allegations of pervasive, ongoing egregious conduct. Plaintiff failed to state a hostile work environment claim.

### IV. Title VII Retaliation

To establish a *prima facie* case of retaliation, the plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007), *abrogated by Hamilton v. Dallas Cnty.,* 79 F.4th 494 (5th Cir. 2023).[2] "A 'protected activity' under Title VII is 'opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII.'" *Newell v. Acadiana Plan. Comm'n Inc.*, 637 F. Supp. 3d 419, 432–33 (W.D. La. 2022). "Title VII thus covers two distinct types of protected activity: (1) opposition to any practice rendered unlawful by Title

---

[2] *Hamilton* held that "[t]o adequately plead an adverse employment action, plaintiffs need not allege discrimination with respect to an 'ultimate employment decision.' Instead, a plaintiff need only show that she was discriminated against, because of a protected characteristic, with respect to hiring, firing, compensation, or the 'terms, conditions, or privileges of employment.'" *Hamilton,* 79 F.4th at 506.

10

VII (the 'opposition clause'), and (2) making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII (the 'participation clause')." *Id.*, citing *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 274, 129 S.Ct. 846 (2009).

Plaintiff alleges that she participated in and investigated an internal EEOC claim involving CEO Hamilton prior to his appointment and that CEO Hamilton fired her in retaliation upon his appointment. (¶11; 14). Although Defendants agree that participating in an EEOC investigation constitutes a protected activity, Defendants argue that the complaint fails to allege sufficient details about the protected activity and lacks allegations of a causal connection. The Court agrees that Plaintiff's allegations are sparse; however, they are just enough to clear Rule 12(b)(6)'s low hurdle. See *Cuellar v. Sw. Gen. Emergency Physicians, P.L.L.C.*, 656 F. App'x 707, 710 (5th Cir. 2016) (holding that the plaintiff stated a retaliation claim in alleging that she was fired after reporting a supervisor's purported harassment and noting that "a viable Title VII *retaliation* claim does not necessarily depend on a viable *harassment* or *discrimination* claim." (emphasis in original)).

## V.     **State Law Defamation**

Plaintiff asserts a state law claim for defamation based on CEO Hamilton's alleged statement to others that Plaintiff was terminated for stealing money from ICCHC "or was actively never available to the CEO." (Rec. Doc. 1, ¶15-17).

11

Defendants urge the Court to dismiss this state law claim for lack of supplemental jurisdiction once federal law claims are dismissed. Because one federal law claim survives, the Court declines to dismiss Plaintiff's state law claim at this stage under 28 U.S.C. §1367(c)(4).

Defendants further move to dismiss Plaintiff's defamation claim for lack of sufficient factual allegations.

> In order to prevail on a defamation per se claim, a plaintiff must prove the following four elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. By contrast, defamation by innuendo occurs when one publishes *truthful* statements of fact and those truthful facts carry a false defamatory implication about another. In other words, defamatory meaning can be insinuated from an otherwise true communication.
>
> The publication element of both claims does not require that the defamatory comment be published to the general public, but is satisfied by communication to a person other than the one defamed. Under Louisiana law, communication between officers and agents of the same corporation, and in relation to their duties for the corporation cannot be construed as communication to a third party for purposes of establishing the publication element of a defamation action. Notably, failure to prove any element invalidates a defamation claim.

*Williams v. Genesis Energy, LLC*, No. CV 20-35-JWD-EWD, 2021 WL 1227873, at *10–11 (M.D. La. Mar. 31, 2021) (cleaned up; citations omitted).

The plaintiff must set forth allegations of defamation with reasonable specificity. *Badeaux v. Southwest Computer Bureau, Inc.*, 2005-0612, p. 10 (La. 3/17/06), 929 So. 2d 1211, 1218. Reasonable specificity entails "information about

who made the alleged defamatory statements, how the alleged statements were communicated, the specific language of the alleged statements, or to whom the alleged statements were made." *Express Lien, Inc. v. Nationwide Notice, Inc.,* No. CV 16-2926, 2017 WL 1091252, at *2 (E.D. La. Mar. 23, 2017).

Plaintiff alleges "it has been reported by the CEO and other employees that the Plaintiff was terminated due to stealing money from ICCHC, which is purely defamatory and damaging to her reputation in a small-town community." (Rec. Doc. 1, ¶15). Defendants refute the allegations, but the Court cannot consider factual defenses on the merits at this early stage. Although the timing of the allegedly defamatory statements can be reasonably inferred based on the totality of the complaint, the allegations do not show to whom such alleged statements were made. Such statements made within the organization would not qualify, because "[i]n Louisiana, statements between employees, made within the course and scope of their employment, are not statements communicated or publicized to third persons for the purposes of a defamation claim." *Brackens v. Stericycle, Inc.,* 829 F. App'x 17, 23 (5th Cir. 2020), quoting *Williams v. United Parcel Serv., Inc.*, 757 F. App'x 342, 345 (5th Cir. 2018). Plaintiff states in her opposition that Defendants made the allegedly false statements to third parties, including prospective employers and others in the community. (Rec. Doc. 12, p. 7). Such allegations would suffice and cure the complaint's deficiency.

13

## VI.     <u>Plaintiff's Request to Amend</u>

Plaintiff requested an opportunity to amend the complaint to more sufficiently allege facts in support of her claims. (Rec. Doc. 13, p. 22). "District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner which will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). The court in its discretion may disallow amendment if the amendment would be futile. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). "Futility is determined under Rule 12(b)(6) standards, meaning an amendment is considered futile if it would fail to state a claim upon which relief could be granted." *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016). "[A] district court is not obligated to grant a futile motion to amend, for instance, when 'the plaintiff has already pleaded his best case.'" *Hernandez v. W. Texas Treasures Est. Sales, L.L.C.,* 79 F.4th 464, 468 (5th Cir. 2023), quoting *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009).

Regarding her claims for gender discrimination and hostile work environment, Plaintiff's opposition duplicates many of the complaint's allegations and provides no new factual allegations that, if added to the complaint, would affect the Court's ruling. Thus, the Court finds that these alleged facts constitute Plaintiff's

14

best case, and Plaintiff should not be permitted to amend to assert gender discrimination and hostile work environment claims. Regarding her defamation claim, as discussed above, Plaintiff should be permitted to amend to assert further factual allegations regarding publication of the allegedly defamatory statements to third parties.

## Conclusion

For the foregoing reasons, the Court recommends that Defendants' Motion to Dismiss (Rec. Doc. 10) be granted in part and denied in part. The motion should be granted to dismiss Plaintiff's Title VII discrimination and hostile work environment claims. The motion should be denied to the extent Defendants seek to dismiss Plaintiff's Title VII retaliation claim and Plaintiff should be permitted an opportunity to amend the complaint to better allege facts in support of her defamation claim. Any amended complaint shall exclude claims for Title VII discrimination and hostile work environment.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 6th day of November, 2025.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE